IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN WILLIS WARREN, | * |
| Petitioner | * |
| v. | * Civil Action No. RDB-14-504 |
| BOBBY P. SHEARIN, and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * |
| Respondents | * |
| | *** |

# MEMORANDUM OPINION

On February 5, 2014,[1] Petitioner John Willis Warren filed the instant 28 U.S.C. § 2254 habeas corpus application attacking his convictions from 2000 for first-degree murder and a related handgun offense. (ECF No. 1). Respondents filed an Answer to the Petition, arguing that the Petition should be dismissed as time-barred under 28 U.S.C. §2244(d)(1). (ECF No. 8). Alternatively, Respondents argue that the Petition does not state a basis for relief and should be denied, without a hearing, on that basis. Warren filed a reply, stating that the Petition is timely filed and states a basis for relief. (ECF No. 10). After reviewing these papers, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. §2254(e)(2). For the reasons set forth herein, the Court shall DENY and DISMISS the Petition with prejudice.

---

[1] The Petition was signed on February 5, 2014, and is deemed filed on that day. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

**PROCEDURAL HISTORY**

On November 17, 2000, after a jury trial in the Circuit Court for Baltimore City, Warren was convicted of first-degree murder and related handgun offenses. (ECF No. 1, p. 1 ; Resp. Ex. 13, p.1).[2] He was sentenced on January 20, 2001, to consecutive terms of life plus twenty years in prison. (ECF No. 1, p. 1; Resp. Ex. 13, p. 1).[3] Warren appealed the judgment to the Court of Special Appeals of Maryland on the sole ground of insufficient evidence. (ECF No. 1, p. 2). The Court of Special Appeals affirmed his convictions in an unreported opinion dated April 5, 2002. (ECF No. 1, pp. 2-3; Resp. Ex. 9). Warren filed a petition for a writ of certiorari to the Court of Appeals of Maryland, which was denied on June 21, 2002. (ECF No. 1, p. 3; Resp. Ex. 10). He did not file a petition for writ of certiorari to the United States Supreme Court. (ECF No. 1, p. 3). Accordingly, Warren's conviction became final for direct appeal purposes on September 19, 2002, when the time for seeking review in the Supreme Court expired. *See* Sup. Ct. Rule 13.1

Warren filed a petition for a writ of actual innocence and motion for new trial in the Circuit Court for Baltimore City on January 29, 2010, which was denied without a hearing on June 15, 2010. (ECF No. 1, p. 5; Resp. Ex. 13, p. 2). On October 14, 2010, Warren filed a post-conviction petition in the circuit court, alleging prosecutorial misconduct and ineffective assistance of counsel. (ECF No. 1, pp 3-4; Resp. Ex. 11). Subsequently, he filed a pro se supplement to his petition and a counseled amended petition for post-conviction relief. (Resp. Ex. 13, p. 2).  After a December 10, 2012, hearing, the circuit court denied the petition on

---

[2] All page numbers reflect the ECF pagination, except those in Respondents' Exhibits, which were not electronically filed.

[3] The handgun offenses were merged.

February 11, 2013.  (ECF No. 1, p. 4; Resp. Ex. 12, 13).  Warren filed an application for leave to appeal to the Court of Special Appeals, which was summarily denied in an unreported opinion on January 15, 2014. (ECF No. 1, p. 4; Resp. Ex. 14, 15).  The court's Mandate issued on March 12, 2014.  (Resp. Ex. 15).

Warren filed the instant Petition on February 5, 2014.[4]

## DISCUSSION

Warren presents one claim for this court's review: "The State withheld evidence that would have changed the outcome of my trial."  (ECF No. 1, pp. 5-6).  Before it can address the merits of Warren's claim, however, the court must first determine whether the Petition is properly before this Court.

### I. TIMELINESS

Title 28, U.S.C. § 2244(d)(1) provides, in relevant part:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
...

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The statute further provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  *Id.* § 2244(d)(2).

---

[4] *See* n. 1.

Respondents argue that, in Warren's case, the period of limitation began to run on September 19, 2002, and expired on September 19, 2003. (ECF No. 8, p. 9). Warren did not file his federal petition until more than ten years after the deadline. Further, "[b]ecause there were no properly filed state post conviction or other collateral proceedings related to Warren's cases pending in state court that would have tolled the limitations period during that time, Warren's current federal habeas petition is time-barred under 28 U.S.C. § 2244(d)." *Id.* (internal citation omitted). Although Warren states that he "filed a reconsideration of leave to appeal in the Special Appeals Court," which was pending at the time he filed the instant Petition, (ECF No. 1, p. 5), he did not file his petition for writ of actual innocence and petition for post-conviction relief until 2010, well past the expiration of the limitations period for filing a federal habeas petition. Therefore, the Petition is untimely under § 2244(d)(1)(A).

Warren, however, contends that "[he] is entitled to Federal review pursuant to 28 U.S.C. § 2244 (d)(1)(D)." (ECF No. 10, p. 1). He alleges that: "Soon after my conviction and sentence in 2001, I filed repeated M.P.I.A. request[s] to the Baltimore City Police Department/Homicide Division requesting my investigation files. They finally sent my files in 2009 and I discovered a clear 'Brady violation' soon after I filed an 'actual innocence[']] and then my post-conviction." (ECF No. 1, p. 5). Warren states that:

> Petitioner's petition is timely filed and does state a basis for relief. Pursuant to 28 U.S.C. § 2244(d)(1)(D), Petitioner's exercise of due diligence in discovering the Brady violation in the case sub judice and acted diligently after the discovery after the discovery of the Brady violation. Petitioner cannot be held accountable or penalized because of his Trial Counsel's "ineffectiveness" for failing to discover the Brady violation. At all relevant times, Petitioner relied on counsel during every and all proceedings.

4

(ECF No. 10, p. 3).[5]  Warren provides no further information as to when he began filing his "repeated M.P.I.A. requests" or when in 2009 he "discovered" the alleged *Brady* violation.[6]

Respondents argue that, even under § 2244(d)(1)(D), the Petition is still untimely. They posit that:

> Warren does not identify in his petition the date upon which the factual predicate for his prosecutorial misconduct claim was discoverable, nor does he substantiate his assertions that he acted diligently to discover the information or acted diligently after the discovery of the information. In any event, Warren's bald and vague assertions are insufficient to invoke the alternative accrual provided by 28 U.S.C. § 2244(d)(1)(D). Based on the facts currently before the court, Warren's petition should be dismissed as time-barred.

(ECF No. 8, p. 10)(internal citation omitted).

Respondents are correct that the Petition is vague and lacks specifics. Because the court cannot determine with certainty that the Petition is time-barred, however, it will not dismiss the Petition on that basis.

Assuming that the Petition is timely filed, it would fail on the merits. Accordingly, the Court turns to the merits of Warren's claims.

## II.   STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

---

[5] At his December 10, 2012, post-conviction hearing, Warren stated in closing: "I mean for years I've been trying to get my files. I mean for years I've been writing trying to get my files. I've been trying to get the State's attorney's files. I took them to Court in front of Judge Sylvester Cox to get the files." (Resp. Ex. 12, p. 119).

[6] At the post-conviction hearing, Warren testified that he received the documents on July 26, 2009. (Resp. Ex. 12, pp. 11-12).

> adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d). The statute sets forth a "highly deferential standard for evaluating state-court rulings, *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and is "difficult to meet," *Cullen v. Pinholster*, 563 U. S. __, __, 131 S. Ct. 1388, 1398 (2011).

A state adjudication is contrary to clearly established federal law under ¶ 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme] Court." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application analysis" under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* at 785 (internal quotation marks omitted).

Under § 2254 (d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," *id.*, a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts, *id.* "[A] federal habeas

court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379. Warren's claim will be examined under this framework.

### III. PROSECUTORIAL MISCONDUCT/*BRADY* VIOLATION

Warren claims that: "The State withheld evidence that would have changed the outcome of my trial." (ECF No. 1, pp. 5-6). In support, he states: "There was no motive presented in my case, nobody said I committed the crime ... it was all circumstantial. But the State withheld evidence that points to two suspects with a motive, ability, and opportunity to commit this crime, which also supports and corroborates the defense theory." *Id.*, p. 6. Specifically, he alleges that "[t]he prosecutor withheld the interview between Julia Smith and the police, in which Ms. Smith stated that she heard two individuals, neither of whom was the petitioner, talking about killing the victim." (ECF No. 10, p. 1). In addition,. Smith told homicide detectives she had been told by someone else that the same two individuals, "Rome" and "Wright," were hiding in the victim's yard the night of the murder. *Id.*, pp. 4-5; *see also* (Resp. Ex. 12, p. 14) (noting that Ms.

7

Smith's statements "plac[ed] them at the scene of the crime"). Warren argues that "[t]his withheld evidence by the prosecutor was favorable and material to the defense, and was clearly a Brady violation." (ECF No. 10, p. 1; *see also id.*, p. 5) ("The fact that Petitioner was not one of the individuals Julia Smith revealed to police in regards to conversation about the plot to kill the victim is highly material within itself."). Therefore, he contends, he was denied a fair trial. (ECF No. 10, p. 1).

In *Brady v. Maryland*, defense counsel asked the prosecution to allow him to examine statements made by Brady's accomplice. 373 U.S. at 84. Several statements were shown to defense counsel, but one, in which the accomplice admitted committing the homicide of which he and Brady were accused, was withheld and discovered by the defense only after Brady's trial had ended and his conviction had been affirmed. *Id.* The Supreme Court held that the withholding by the prosecution, whether or not the prosecution acted in good faith, of evidence favorable to an accused upon request violates due process where the evidence is material either to a defendant's guilt or punishment *Id.* at 87.

> We have since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, and that the duty encompasses impeachment evidence as well as exculpatory evidence. Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Moreover, the rule encompasses evidence known only to police investigators and not to the prosecutor.

*Strickler v. Greene*, 527 U.S. 263, 280-81 (1999)(internal citations and quotation marks omitted).

There are three fundamental components to a *Brady* claim: (1) "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the "evidence must have been suppressed by the State"; and (3) the evidence must be material to the defense, that is, "prejudice must ... ensue[]." *Walker v. Kelly*, 589 F.3d 127, 142

8

(2009)(quoting *Strickler*, 527 U.S. at 281-82)(alterations in original).

The post-conviction court made the following findings and conclusions regarding Warren's *Brady* claim:

> The case of *Brady v. Maryland*, 373 U.S. 83 (1963), held that the prosecution violates a defendant's right to due process when it withholds exculpatory evidence. In the instant matter, Petitioner alleges that the information provided to the police by Ms. Smith was exculpatory, and that State was therefore obligated to disclose it. Petitioner further argues that the State's failure to do so deprived Petitioner of due process, thus entitling him to post-conviction relief.
>
> The Court of Appeals, in *Conyers v. State*, 367 Md. 571, 597 (2002)(quoting *Wilson v. State*, 363 Md. 333, 345-47 (2001)), set forth three components necessary to establish a *Brady* violation:
>
>> Petitioner must establish "(1) that the prosecutor suppressed or withheld evidence that is (2) favorable to the defense – either because it is exculpatory, provides a basis for mitigation of sentence, or because it provides grounds for impeaching a witness – and (3) that the suppressed evidence is material."
>
> Complicating Petitioner's burden of establishing that the prosecutor suppressed or withheld evidence is the fact that both the State's and Petitioner's trial files have been lost or destroyed. Nevertheless, from the evidence presented at the hearing, this Court finds that Petitioner satisfied the first component required to prove a *Brady* violation. Likewise, the Court finds that the suppressed or withheld information was favorable to the defense. However, it is upon the third component that Petitioner's claim fails.
>
> In cases such as the Petitioner's, "where there is no false testimony but the prosecution nonetheless fails to disclose favorable evidence, the standard for materiality ... is whether, there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 598. Therefore, in order to be a *Brady* violation, the undisclosed information must have been both admissible and more than merely cumulative. *State v. Thomas*, 325 Md. 160, 191 (1992).
>
> The undisclosed material upon which Petitioner bas[e]s his Brady claim consists of two statements made to the police by Ms. Smith (hereinafter "the statements"): 1) that she heard Wright & Rome talk about killing the victim, and 2) that someone else said that Wright and Rome were hiding in the victim's backyard on the night of the murder. No evidence was presented at the hearing as to what Ms. Smith's actual trial testimony would have been, because she is now

9

> deceased. Nevertheless, any testimony from her regarding the statements would likely have been inadmissible hearsay. While, at the hearing, Petitioner's trial counsel testified that she "would have investigated further" had she known of the statements, there has been no showing of any admissible evidence that would have resulted from such further investigation, or of how any additional evidence would have been used to effectuate a different outcome at the trial. Petitioner has therefore failed to meet his burden of establishing the materiality component of a *Brady* violation.

(Resp. Ex. 13, pp. 4-5).

Warren contends that the state court adjudication of the merits of his *Brady* claim:

> 1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
> 2) Resulted in a decision that was based on an unreasonable determination of the facts in light of evidence in the State Court proceeding.

(ECF No. 10, p. 2) (citing 28 U.S.C. § 2254(d)). Respondents counter that the "state court's determination survives scrutiny under 28 U.S.C. § 2254(d)." (ECF No. 8, p. 16).

Respondents do not appear to contest the circuit court's findings that the statements were withheld and favorable to Warren. *Id.*, pp. 13-18. Therefore, the court turns to the post-conviction court's finding that Warren had not met his burden of establishing the third component, materiality, of a *Brady* violation.

"Evidence is considered material, and relief is therefore appropriate, if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" *Thomas*, 325 Md. at 190 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *accord Walker*, 589 F.3d at 142 ("Evidence is considered material when it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"(quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

Further, as the circuit court correctly stated, the undisclosed information must not be merely cumulative and must be admissible. *Thomas*, 325 Md. at 191. "[T]he omission must be evaluated in the context of the entire record." *United States v. Agurs*, 427 U.S. 97, 112 (1976).

The recent decision issued by the United States Court of Appeals in *Nicolas v. Attorney General of Maryland*, __ F.3d __, 2016 WL1660204 (April 27, 2016), illustrates the high bar petitioners must meet in seeking federal habeas review under 28 U.S.C. §2254. Richard Nicolas was convicted by a jury of murdering his infant daughter. At trial, the State's theory was that Nicolas shot his daughter in his car and then went to the movies to provide himself with an alibi. Nicolas' account was that while he was driving his daughter home from the movies another driver bumped his car. The other vehicle pulled up along the passenger side of Nicolas' car and a heated argument ensued. Nicolas contended that as he exited and came around the back of his car, he heard a gunshot and the other car sped away. The State's evidence against Nicolas at trial was largely circumstantial. The State relied on lividity pattern evidence on the victim to estimate the time of shooting and to refute Nicolas' account of the incident.

Years later, Nicolas' Maryland Public Information Act request produced two witness statements that had not been disclosed at trial. The witnesses were guests at a nearby hotel at the time of the murder. One witness told detectives that at about 10 p.m. he observed a vehicle with its engine running, then he heard a loud noise like the car back fired and then sped off. The other potential witness told investigators that she observed a vehicle and heard a loud popping sound like a gun shot and the car sped off. This timeline paralleled the time Nicolas testified his daughter was shot by someone in a second car. Nicolas sought to reopen his state post-conviction hearings, arguing the State's failure to disclose the witness statements violated *Brady*.

On federal habeas review, this Court found that the evidence on the critical point of the

State's theory of the time of the shooting was likely to have an effect on the outcome of Nicolas' trial, and concluded the state court had based its holding on an unreasonable determination of the facts and unreasonably applied *Brady*. *See Nicholas v. Attorney General of the State of Maryland*, 3d 2015 WL 1469184 (D. Md. 2015). This Court granted habeas relief to Nicolas after concluding that the unavailability at trial of the evidence, which was favorable to Nicolas, called into question the result of that trial, undermined confidence in its outcome, and did not result in a jury verdict worthy of confidence. *Id*. at *10.

The State appealed. The United States Court of Appeals Fourth Circuit reversed, noting relief under § 2254 may be granted only if "the state court's ruling" was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Nicolas,* 2016 WL1660204 * 5, (quoting *Richte*r, 562 U.S. at 103). In *Nicolas,* the state court indicated that it had considered the record as a whole and found the witness statements immaterial. The Fourth Circuit concluded that when considering the witness statements with the record as a whole, reasonable jurists could well conclude that the statements did not "put the whole case in such a different light as to undermine confidence in the verdict." *Nicholas*, 2016 WL 1660204 at 6, (quoting *Kyle*s, 514 U.S. at 435). Although Nicolas had contested the State's other evidence and offered evidence in his defense— including his own testimony—the jury found him guilty. *Nicolas,* 2016 1660204 * 5. The undisclosed witness statements undermined only the State's time of death theory, and as the State maintained, the jury could have found the witness statements irrelevant. Accordingly, the Fourth Circuit concluded that it was not unreasonable for the state court to find that, when considered with all the other evidence offered at trial, the statements would have made no difference to the verdict. Thus, it was not unreasonable for the state courts to reject Nicolas's Brady claim. In

regard to meeting the exacting standard for habeas relief, the Fourth Circuit reminded that "[i]f this standard is difficult to meet, that is because it was meant to be." *Nicolas,* 2016 WL 1660204 *7, quoting *Richter*, 562 U.S. at 102.

Here, Warren argues that "there was a reasonable probability that the results of the trial would have produced a different outcome had Petitioner been awarded access to 'exculpatory' and 'material' evidence before trial. Even in the absence of said 'exculpatory' and 'material' evidence the jury deadlocked before rendering its verdict." (ECF No. 10, p. 4). During cross-examination by the Assistant State's Attorney at the December 10, 2012, hearing on his state post-conviction petition, Warren testified:

> Q   Now Mr. Warren, what if any significance do you feel this information about Edwin Wright and someone named Rome has to your case?
>
> A   Extreme significance. This actually evidence supported the defense theory in my trial. I mean it's - - it's - - I mean it gives the jury alternative suspects, an alternative theory. My theory in my case was that, you know, I did not commit the crime and this withheld evidence supports the defense argument. The defense - - my lawyer at trial, as you can see from the transcript, she - - she repeatedly tried to explain to the jury the position - - the position of the shooters and where the shooters came from. Clearly this - - clearly this withheld evidence corroborates that.
>
> Q   Now if Ms. Mead had had this information what would you have expected her to do? Information about other suspects is what I'm talking about.
>
> A   Investigate. Investigate and try to locate those individuals ...

(Resp. Ex. 12, pp. 19-20).

Warren's trial counsel testified that she had not seen the statements "because the only suspect they ever, ever had was John Warren ...." *Id.*, p. 49. Had she known about the information she "would have found out about it. It may have been accurate. It may not have been, but I would have at least tried to track down Julia or follow-up with [the Assistant State's

Attorney] on it." *Id.* p. 51.  She further testified that if she had known that there was, in fact, a person named Edwin Wright, as described by Smith, she would have interviewed him, *id.* p. 54, and would have questioned the detective regarding the reports containing Smith's statements, *id.* p. 85.

Similarly, when questioned about prejudice by the circuit court, post-conviction counsel focused on the lack of opportunity to investigate or put forth alternative suspects to the jury. *Id.*, pp. 91-92, 94.  The court, however, noted that Smith's statements themselves "couldn't get into evidence," and that the nature of the outcome of any investigation trial counsel would have performed was speculative, *id.*, p. 97.  Sharon May, Warren's post-conviction counsel stated:

> MS. MAY: And I believe that had Ms. Mead known about it she would have been able to do an appropriate investigation and that information would have been put in front of that jury.  And that there may very well have been - -
>
> THE COURT: Depends on what that information she would have discovered was.
>
> MS. MAY: I'm sorry?
>
> THE COURT: It depends on what the information was.  If all she had was Ms. Smith - -
>
> MS. MAY: I understand.
>
> THE COURT: - - saying she heard something then - -
>
> MS. MAY: But, Your Honor, she would have had the opportunity to find that out.
>
> THE COURT: But here at the post conviction - -
>
> MS. MAY: She wasn't given that opportunity.
>
> THE COURT: At the post conviction hearing the burden is on the petitioner to show the prejudice, not just that they were denied the opportunity to do an investigation that might have shown this or that or the other.  But ... as I understand it to show what the testimony would have been or what that evidence

would have been or what it would have revealed. ...

*Id.*, pp. 97-98.

Warren's argument in this Court is similar to that made by Warren and his counsel at the post-conviction hearing. For example, he states that:

> Smith's statement could've produced a credible and viable investigation. Thus, the information could have possibly proved reliable, resulting in the arrest of some other individual, which could've completely exonerated petitioner. Furthermore, the jury could have found Smith to be credible thus nullifying the confidence in the state's case. Had Smith's statement not been suppressed by the prosecution, defense counsel could have done an investigation which could have possibly unraveled a contrary theory about the crime at hand.

(ECF No. 10, p. 8). As he did in the circuit court, Warren speculates about what might have happened, but produces no admissible evidence.

As noted above, the post-conviction court concluded that "there has been no showing of any admissible evidence that would have resulted from such further investigation, or of how any additional evidence would have been used to effectuate a different outcome at the trial."[7] (Resp. Ex. 13, p. 5). Therefore, the post-conviction court found that Warren had failed to establish the materiality component of a *Brady* violation. *Id.* It follows that, if there was no *Brady* violation, then there was no due process violation or prosecutorial misconduct.[8]

This Court cannot conclude that the post-conviction court's decision on the merits

---

[7] It bears noting that, in an unreported opinion affirming Warren's convictions on direct appeal, the Court of Special Appeals stated that:

> The evidence presented by the State, albeit circumstantial, showed that the appellant was with the victim when the fatal shots were fired, that he ran from the scene carrying a gun, that he had fired a gun at the time of the killing, and that he lied about what had happened.

(Resp. Ex. 9, p. 4); *see also United States v. Agurs*, 427 U.S. 97, 112-13 (1976) ("If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.").

[8] In the course of arguing his *Brady* claim, Warren raised additional allegations, including ineffective assistance of counsel. These claims were included in Warren's state application for post-conviction relief, but not in the Petition before this Court.

15

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The post-conviction court discussed the standard by which materiality must be judged, as articulated by the United States Supreme Court in *Brady v. Maryland* and its progeny and as interpreted by the Maryland appellate courts. (Resp. Ex. 13 pp. 4-5). The circuit court then correctly applied that standard. Moreover, the court's application of the *Brady* standard was not unreasonable, as "fairminded jurists" could disagree on the correctness of the state court's decision. *Harrington*, 562 U.S. at 101.

Nor can it be said that the post-conviction court unreasonably determined the facts "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The post-conviction court conducted an evidentiary hearing, at which Warren and his trial counsel testified, and heard argument. (Resp. Ex. 12). This Court presumes that the state court's determination of factual issues is correct. 28 U.S.C. § 2254(e)(1). Simply put, Warren has not met his "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see also Sharpe*, 593 F.3d at 378 ("Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part.").

Arguably, Warren's Petition is untimely under 28 U.S.C. § 2244(d)(1)(D). In any event, Warren's claim fails on the merits, giving due deference to the state court's factual findings. Accordingly, the Petition will be denied and dismissed.

**CONCLUSION**

For the foregoing reasons, the Petition will be DENIED and DISMISSED by separate Order to follow. A Certificate of Appealability ("COA") will not issue because Warren has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2); *see* Rule 11(a) of the *Rules Governing Section 2254 Proceedings in the United States District Courts*.

*May 17, 2016* _____/s/_____
                                          RICHARD D. BENNETT
                                          UNITED STATES DISTRICT JUDGE